UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FROST NATIONAL BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09-MC-333 (CEJ) |
| ) | |
| THOMAS E. HOWARD, JR., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the application of Frost National Bank (Frost) to confirm an arbitration award entered in the dispute between Frost and defendant Thomas E. Howard, Jr. Defendant has filed a cross-motion to vacate or modify the award. All issues are fully briefed.

### I.    **Factual Background**

On December 19, 2008, Frost filed a demand for arbitration against brothers Thomas E. Howard, Jr., and James C. Howard, seeking to recover money owed under the terms of guaranty agreements signed by the Howards on July 17, 2008. The Honorable Pat Boone was appointed Arbitrator and the hearing was set for April 27, 2009.

Before the scheduled hearing, Frost negotiated a settlement of its claims against James Howard. Between April 8, 2009, and May 13, 2009, counsel for Frost and James Howard exchanged several drafts of the settlement documents. The final version included a section titled "Mutual Release of Claims," which purported to release James Howard (referred to as "Guarantor") from all claims. In relevant part, the release provision states:

> For and in consideration of Guarantor's performance of the terms of this Agreement, Frost on behalf of itself and its successors and assigns, does hereby fully RELEASE AND FOREVER DISCHARGE Guarantor of and from any and all Claims . . . arising out of or relating to the Notes, the Guaranty, and any related Loan Documents . . .

Settlement Agreement, Def. Mem. in Support of Cross-Motion, Ex. 2 [Doc. #8-3 at 3].

Although the parties had extensive negotiations over specific terms of the settlement agreement, at no time did either party request a modification of the mutual release provision. The terms of the settlement agreement were finally agreed to on April 22, 2009. On April 23, 2009, Frost and James Howard exchanged a final document via e-mail. Counsel for both parties indicated that it was acceptable. For reasons that are unclear, a different version of the settlement agreement was created that purported to release not only James Howard as guarantor, but his "descendants, and heirs of ancestors" as well.[1] The version of the settlement agreement that Frost signed did not include the "descendants" language.

Counsel for Frost and James Howard appeared at the arbitration hearing on April 27, 2009. They announced that they had reached a settlement and presented an agreed award to Arbitrator Boone. Thomas Howard and his attorney did not appear for the hearing, and attempts to reach the attorney by telephone were unsuccessful. At the hearing, Frost presented its evidence against Thomas Howard. Arbitrator Boone sent a letter instructing Thomas Howard to submit his documents or evidence no later than May 12, 2009. Thomas Howard and his attorney did not

---

[1] It remains unclear as to how this alteration occurred. The record includes an affidavit submitted in the arbitration proceedings by counsel for James Howard. The affidavit addresses inadvertent alterations that occurred after April 23rd, but does not clarify how the release provision came to include "descendants, and heirs of ancestors." Affidavit of Robert Eggmann, Def. Mem. in Support of Cross-Motion, Ex. 4 [Doc. #8-5].

respond and, on May 13, 2009, the hearings were declared closed. The arbitrator's award was due on or before June 12, 2009.

On May 15, 2009, Thomas Howard submitted a memorandum to the arbitrator, arguing that the "descendants, and heirs of ancestors" language of the release barred Frost's claims against him. Arbitrator Boone set the matter for a hearing on June 2, 2009. On June 1, 2009, Thomas and James Howard filed a joint motion to enforce the release in the April 23rd agreement.

At the hearing on June 2, 2009, Arbitrator Boone asked Thomas Howard's attorney why she did not appear at the April 27th hearing; she declined to answer, citing attorney-client privilege. She stated that on May 14, 2009, she received a copy of the settlement agreement from her client; when she read the release she realized that it might protect her client and filed the untimely memorandum. After hearing argument, Arbitrator Boone denied Thomas Howard's motion to reopen the proceedings. The arbitrator gave the parties until June 5, 2009, to file any additional briefs. On June 5, 2009, the Howards withdrew their joint motion to enforce settlement.

On June 12, 2009, Arbitrator Boone issued a Final Arbitration Award and Findings of Fact and Conclusions of Law. Frost was awarded more than $4.5 million in principal, plus accrued interest through April 27, 2009, per diem amounts, attorneys' fees, and arbitration costs. In addition, Arbitrator Boone (1) denied Thomas Howard's release defense; (2) denied the joint motion for specific enforcement; and (3) stated that the order resolved all claims and "all defenses and counterclaims asserted (or that could have been asserted)" by Thomas Howard. Frost seeks a judgment confirming the award in its entirety; Thomas Howard asks

the Court to vacate the award or, in the alternative, modify the award to remove the provisions addressing his release defense.

II. Discussion

A district court affords an arbitrator's decisions "an extraordinary level of deference" and confirms "so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 798 (8th Cir. 2004). Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract. McGrann v. First Albany Corp., 424 F.3d 743, 748 (8th Cir. 2005) ("We will confirm the arbitrator's award even if we are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.") (quoting Schoch v. InfoUSA, Inc., 341 F.3d 785, 788 (8th Cir. 2003)).

Congress enacted the FAA to replace judicial indisposition to arbitration with a "national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts." Hall Street Associates, L.L.C. v. Mattel, Inc., 128 S. Ct. 1396, 1402-03 (2008) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)). The Act makes contracts to arbitrate "valid, irrevocable, and enforceable," so long as their subject involves "commerce." 9 U.S.C.§ 2. The Act also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. §§ 9-11. Under the terms of § 9, a court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in §§ 10 and 11. Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting

one.  An arbitral award may be vacated only for the reasons enumerated in the FAA. Hall Street, 128 S. Ct. at 1402.

In support of his contention that the award should be vacated, Thomas Howard relies on § 10(a)(4), which provides that an award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Thomas Howard argues that Arbitrator Boone exceeded his authority and decided matters not submitted to him.  Specifically, Thomas Howard contends that Arbitrator Boone had no authority to deny the release defense and the motion to enforce settlement agreement once he decided not to reopen the proceedings.

Frost makes two arguments to support its contention that the arbitrator did not exceed his authority by denying Thomas Howard's release defense.  First, in signing the guaranty documents, the parties agreed to submit "any controversy or claim between or among the parties" to binding arbitration.  The release defense falls within the broad scope of the agreement and the arbitrator thus had authority to deny the defense on the merits.  See International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc., 406 U.S. 487, 491-92 (1972) (agreement to arbitrate "any difference" would include issue of laches).  Alternatively, Frost asserts, the arbitrator had the authority to deny the release defense as untimely submitted.  "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions that grow out of the dispute and bear on its final disposition should be left to the arbitrator."  John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964).  The ambiguity regarding whether the arbitrator denied the defense on substantive or procedural grounds does not provide a basis for vacating the award.  United Steelworkers of America v.

-5-

Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960) ("A mere ambiguity" which permits an inference arbitrator may have exceeded authority is not reason to refuse to enforce award). The Court agrees with Frost that Thomas Howard's release defense was well within the scope of the arbitrator's authority under the arbitration agreement. Thomas Howard's challenge to the arbitrator's denial of the joint motion to enforce settlement is foreclosed by the fact that Thomas Howard withdrew the motion. Accordingly, the cross-motion to vacate the award under § 10(a)(4) will be denied.

Thomas Howard alternatively asks the Court to modify portions of the award under 9 U.S.C. § 11(a) and (c), which provide that a court may modify or correct an award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> * * *
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C.A. § 11. Subsection (a) is inapplicable: Thomas Howard does not contest the accuracy of the figures, and there is no "evident material mistake" in the description of the persons, things or property.

Frost concedes that the opening paragraph of the award contains two errors not affecting the merits that may be modified under subsection (c): (1) The opening sentence incorrectly states that Thomas Howard and/or his attorney appeared at the arbitration hearing on April 27, 2009; and (2) the last sentence of that paragraph incorrectly states that the arbitrator considered the memorandum of Thomas Howard. The award will be modified to correct these inaccuracies. Thomas Howard's

request that the Court modify the award, findings of fact, and conclusions of law to remove paragraphs addressing the release defense will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the application of The Frost National Bank to confirm arbitration award [Doc. #1] is **granted**.

**IT IS FURTHER ORDERED** that the cross-application of Thomas E. Howard, Jr., to vacate and/or modify and correct arbitration award [Doc. #7] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Thomas E. Howard's motion for extension of time to file response [Doc. #3] is **granted**.

**IT IS FURTHER ORDERED** that Frost National Bank's motion for leave to file a surreply [Doc. #11] is **granted**.

A separate judgment in accordance with this memorandum and order will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 9th day of February, 2009.